`

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD NORLAND,

                    Plaintiff,                          CV-05-6312-ST

        v.                                   ORDER, FINDINGS AND
                                                   RECOMMENDATION

STATE OF OREGON, *et al*,

                      Defendants.

STEWART, Magistrate Judge:

## **INTRODUCTION**

        Plaintiff, Richard Norland ("Norland"), was arrested on October 7, 2005, and detained in

the Lane County Jail for one week. On October 13, 2005, the same day as his release from jail,

Norland, appearing *pro se*, filed a Petition for Writ of Habeas Corpus under 28 USC § 2241

(docket # 1), claiming that his release had been delayed and challenging the conditions of his

confinement. The Petition was dismissed for failure to allege how the delay in Norland's release

violated his federal rights and because habeas corpus is not the proper mechanism to litigate

challenges to conditions of confinement (docket # 3). The court advised Norland that if he

1 - ORDER, FINDINGS AND RECOMMENDATION

wished to present claims challenging the conditions of his confinement in a context in which the merits would be considered, he should file a civil rights complaint. After Norland failed to file a civil rights complaint, judgment was entered against him and the case was dismissed without prejudice (docket # 5).

Later, Norland submitted a Motion for Relief from Judgment Due to Excusable Neglect (docket # 6), which this court granted (docket # 7). The case was reopened, and on May 30, 2006, Norland filed an Amended Complaint for Punitive and Compensatory Damages, Class Action Declaratory and Injunctive Relief (docket # 10) alleging a civil rights action under 42 USC § 1983 against various defendants associated with his arrest, arraignment, incarceration, and conditions of confinement. In August 2006, the court dismissed the claims against the State of Oregon, Hardy Myers, and the Oregon Department of Corrections and the claims for damages against District Attorney Harcleroad and Deputy District Attorney Robert Lane (docket # 15). In December 2006, the court also dismissed the claims against Deputy Rose (docket # 32).

On December 27, 2006, Norland filed a Second Amended Complaint (docket # 33) to which defendants filed Answers (dockets ## 36-40). Norland filed subsequent motions for temporary restraining orders and preliminary injunction (dockets # 41 & # 42) which were denied (docket # 45). On May 9, 2007, the court granted defendants' motion to extend the case schedule by approximately 90 days (docket # 49). On August 20, 2007, the court granted Norland's unopposed motion to extend the case schedule by another 90 days (docket # 51). At that point, discovery and dispositive motions were due November 4, 2007, and the pretrial order was due April 18, 2008.

///

On January 14, 2008, defendants filed several discovery and sanctions motions based on

Norland's failure to prosecute (dockets ## 51-55).  On January 29, 2008, Norland responded with

a second motion to extend the case schedule (docket # 57).  On February 19, 2008, this court

denied defendants' motions and granted Norland's motion to extend time, set a new case

schedule, and advised that any further requests for extensions of time would be denied "absent an

emergency or an unforeseen delay not caused by one of the parties" (docket # 60).  As a result,

the Joint Alternate Dispute Resolution Report ("JADRR") was due March 14, 2008, completion

of discovery was extended to April 11, 2008, and filing of dispositive motions and the pretrial

order were extended to May 9 and October 14, 2008, respectively.

The parties did not file a JADRR.  Instead, on March 14, 2008, defendants filed a Joint

Case Management Statement and Report ("JCMSR") (docket # 61) without any contributions

from Norland due to his lack of communication with defendants.  However, this JCMSR

included defendants' view as to settlement and ADR prospects as required by the JADRR.

Norland filed a  Petition for False Claims Act and Qui Tam Relief (docket # 63) which this court

dismissed without prejudice (docket # 67).  No dispositive motions were filed by the May 9,

2008 deadline.

Prior to the discovery deadline of April 11, 2008, the parties filed other motions,

including Norland's Motion for Sanctions, Plaintiff's Update[d] JADRR, Discovery Motions and

to Amend Complaint (docket # 62), defendants' Second Motion for Discovery Sanctions (docket

# 66), and Norland's Motion for Sanctions, Update[d] JADRR, Discovery Sanctions and to

Amend Complaint (docket # 70).  The court denied all of those motions on May 19, 2008 (docket

# 71).

An unsuccessful settlement conference took place before Magistrate Judge Acosta on December 2, 2008 (docket # 81). The court then reset the case schedule, after which defendants filed the current Motion for Summary Judgment (docket # 83). This court advised Norland of the requirements for responding to summary judgment motions on January 6, 2009 (docket # 85). Two years previously, on January 18, 2007, this court waived the requirement that a Concise Statement of Material Facts ("CSMF") accompany dispositive motions (docket # 35). Thus, defendants originally did not include a CSMF with their summary judgment filing. However, Norland objected, prompting defendants to file a CSMF (docket # 91). Norland had ample opportunity to present a response to defendants' CSMF, and did so by filing Plaintiff's Response to Defendants' CSMF (docket # 93).

In addition to defendants' motion for summary judgment, Norland also filed a Motion for Sanctions (part of docket # 93), to which defendants responded by filing their own Motion to Strike Plaintiff's Response and Request for Sanctions (docket # 99). A careful review of these two motions reveals that they rest upon a multitude of accusations involving alleged violations of the Local Rules. Rather than digress into settling those disputes, it is be a better use of judicial resources to address the merits of Norland's pleadings and defendants' summary judgment motion. All matters are fully briefed. Accordingly, the parties' motions to strike and/or for sanctions (docket # 93 & # 99) are DENIED.

For the reasons that follow, defendants' Motion for Summary Judgment (docket # 83) should be GRANTED in part as to all claims except as to Count 3 claim alleging a § 1983 violation based on a strip search.

///

## FACTUAL BACKGROUND

This case involves the intertwining of several related storylines involving Norland,

culminating in his arrest on October 7, 2005.  Norland apparently has been engaged in a

longstanding dispute with the United States Trustee involving his activities as a "petition

preparer" for individuals filing for protection under the United States Bankruptcy Act.  Plaintiff's

Response to Defendants' Motion for Summary Judgment (docket # 88), pp. 4-6 and Exs. BB, EE

& FF.  The United States Trustee apparently filed complaints against Norland and/or the

businesses he worked for or operated,[1] seeking to shut down the businesses and prevent Norland

and others from assisting individuals filing bankruptcy petitions.  *Id*, Ex. BB (Stifel Aff.), pp. 1-

2; *United States Trustee, Eugene v. Norland*, Case Nos. 04-6281-FRA, 04-6038-FRA, and 05-

6095-AER, United States Bankruptcy Court for the District of Oregon.  A hearing related to that

dispute was set before United States Bankruptcy Judge Frank Alley in Eugene, Oregon, on

October 13, 2005.  Second Amended Complaint, Ex. R, p. 5 (docket # 33-2, p. 34); Stifel Aff.,

p. 2.

Some 10 months previously, on January 11, 2005, Norland was convicted by a stipulated

facts trial of two counts of Encouraging Child Sexual Abuse in the Third Degree.[2]  Defendants'

Concise Statement of Material Facts ("Defs' CSMF") (docket # 91), ¶ 1, Attachment 1, p. 1;

---

[1] Several business names are mentioned in the various documents, including the "McType Store," "We The People of Oregon, Inc.," and the "Freedom Store."  Stifel Aff., pp. 1, 3; Johannessen Aff., p. 1.  According to the Oregon Secretary of State's Corporation Division website, "McType Store of Eugene, LLC" was dissolved April 20, 2005, "We The People of Oregon, Inc." was dissolved February 14, 2006, and the "Freedom Store Co-Op" was dissolved September 15, 2006.

[2] This trial followed prosecution of Norland for eight counts of the same crime.  Lane Aff., p. 2.  Norland appears to assert that he was innocent of these crimes and that a man named James Lynch, whom Norland had let live in an "auxiliary shelter" at his residence and who had been granted custody of a minor female, was in fact the perpetrator or that a computer virus infected his computer with the offending materials.  Plaintiff's Response to Defs' CSMF (docket # 93), pp. 3-4.  However, whether Norland was guilty of the crimes for which he was on probation is irrelevant to the pending claims.

Defs' CSMF, Attachment 7 (Lane Aff.), p. 2.  He was placed on probation through Lane County

Community Corrections for a period of 24 months and ordered to perform a total of 80 hours of

community service through Lane County Adult Corrections no later than November 30, 2005, at

a minimum rate of 10 hours per month.  Defs' CSMF, Attachment 1, pp. 2-3.  Defendant Michael

Maslow was assigned as Norland's probation officer.  *Id*, Attachment 2 (Maslow Aff.), p. 2.

Sergeant Greg Fox supervised Lane County's Adult Corrections program. *Id*,

Attachment 4 (Fox Aff.), p. 2.  Fox was responsible for reporting failures to complete or comply

with community service work requirements to the court.  *Id*.  Norland was assigned to complete

his community service work through Bring Recycling.  *Id*.  By mid-September, Fox determined

that Norland was more than 60 hours behind on his community service work obligation, had not

yet completed any community service work hours, and in fact had not yet even contacted the

Community Service office.  *Id*.

On September 12, 2005, Fox submitted a memorandum to the Lane County Circuit Court

explaining Norland's failure to comply, which Fox copied to the Lane County District Attorney's

Office and to Maslow.  *Id*, Exhibit A (Defs' CSMF, Attachment 5).  Following receipt of Fox's

memorandum, Maslow attempted to contact Norland, ordering him to report on September 16,

2005.  Defs' CSMF, Attachment 3.  Maslow ordered Norland to make contact with the

community service work program coordinators.  *Id*.

Norland contacted Bring Recycling and was supposed to report to work on September 27,

2005, but did not report because he injured his toe.  *Id*, Attachment 3.  That same day, Lane

County District Attorney Robert D. Lane filed a Motion and Affidavit requesting an Order to

Show Cause be issued against Norland.  Fox Aff., Ex. B (Defs' CSMF, Attachment 6).  On

September 29, 2005, Lane County Circuit Court Judge Karsten M. Rasmussen issued a bench

warrant for Norland's arrest based on a probation violation for failing to complete his community

service work.  Second Amended Complaint, Ex. C.

On October 6, 2005, Maslow received a copy of the bench warrant.  Maslow Aff., p. 2.

Norland was scheduled to report in to Maslow the following day.  *Id*, p. 3.  When he did so,

Maslow arrested Norland on the bench warrant, placed him in handcuffs and transported him to

the Lane County Adult Correctional Facility in the back seat of the Parole and Probation cage

car.  *Id*.  Maslow was unaware that Norland suffered from post traumatic stress disorder

("PTSD") or that Norland had an exemption from use of a seat belt.  *Id*; *see also*, Plaintiff's

Response to Defs' CSMF, Ex. 9 (Request for Exemption from Use of a Safety Restraint System,

dated May 6, 2001).  At the time of his arrest, Norland apparently also owed over $400 in traffic

fines to Eugene Municipal Court.  Plaintiff's Response to Defendants' Motion for Summary

Judgment (docket # 88), p. 5 and Exs. DD, GG, HH; Stifel Aff., pp. 3-4.

Norland was booked into the Lane County Adult Correctional Facility at 10:37 am on

Friday, October 7, 2005.  Defs' CSMF, Attachment 10 (Hooley Aff.), p. 2.  This was too late to

arraign Norland that same day.  *Id*.  After his booking, Norland prepared an "Inmate Request

Form" or "kite" requesting forms for filing a habeas corpus petition, as well as access to legal

materials and supplies in order to file a complaint alleging violations of 42 USC § 1983 and

related state law claims.  Second Amended Complaint, Exs. I-1 & I-2.  Security staff received

that request at about 10:00 p.m. the same evening Norland was arrested.  Defs' CSMF,

Attachment 16 (Pishioneri Aff.), p. 2.  That apparently was too late in order for Norland to obtain

stationary or stamps the same day.  Second Amended Complaint, Ex. P (James Norland Aff.),

p. 1.  Lane County Deputy Sheriff Joe Pishioneri, who served as the Law Library Manager at the

Lane County Adult Correctional Facility, received that request midday on October 10, 2005.

Pishioneri Aff., p. 2.

Norland was arraigned in Eugene Municipal Court at 11:00 a.m. on Monday, October 10,

2005.  Hooley Aff., p. 2.  Although it is not clear from the record, this arraignment apparently

was on the parking tickets or on a related contempt charge that was added some time after

Norland's arrest.  Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. GG.

At 1:30 p.m. that same afternoon, Norland appeared in Lane County Circuit Court on the

probation violation.  Second Amended Complaint, Ex. D.  The court scheduled a probation

violation hearing for October 24, 2005.  *Id*, Ex. E1.  The booking form lists the amount of "Bail

or Security Sentence" on the probation violation as "0."  Plaintiff's Response to Defs' CSMF,

Ex. 5-1.  However, on the same day Norland was arraigned, Release Assistance Officer Kari

Malone set a $20,000 security requirement on the probation violation charge.  *Id*, Ex. 5-2.  A

"priority hold" was placed on Norland, which required him to pay $451 for contempt of court,

apparently involving the failure to pay parking tickets through the Eugene Municipal Court.  *Id*,

Exs. DD, GG, HH.  In addition, before he was released from custody, he had to post $2,000 (10%

of the security amount) in bail.  Plaintiff's Response to Defs' CSMF, Ex. 7 (Davis Decl.), ¶ 3;

Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. BB (Steifel Aff.), pp. 3-

4.

///

The following day, Norland submitted another "Inmate Request Form" (kite) complaining that he had not yet received access to the law library.  Second Amended Complaint, Ex. 13.  He also wrote to Maslow, asking her why he had not been released from jail and why she had a "hold" on him.  Plaintiff's Response to Defs' CSMF, Ex. 15.  Maslow responded to Norland that she did not have a "hold" on him and that he had been arrested on a probation violation warrant that was issued by the court.  *Id.*  That same day, Pishioneri authorized the request for access to the law library and provided Norland with a form for filing a petition for a writ of habeas corpus.  Pishioneri Aff., p. 3.

In response to their inquiries, Norland's friends were given several different stories as to why he had been arrested and how much bail was required in order to secure Norland's release.  James Norland Aff., p. 2; Stifel Aff., pp. 3-4.  Initially, they thought Norland's release could be secured by paying the $450 in parking fines.  Steifel Aff., p. 3.  However, they later learned that his release required posting bail of $2,000.  *Id.*  Norland was released from custody the afternoon of October 13, 2005, after a friend posted $2,000 bail.  *Id*, pp. 3-4.  He missed the hearing that was scheduled in bankruptcy court on October 13, 2005, but managed to file this case the same day.

## FINDINGS

### I. Defendants

#### A. Previously Dismissed Defendants

In his most recent pleading, Norland continues to name as defendants several entities and individuals against whom this court has previously dismissed his claims.  All claims against the State of Oregon and the Oregon Department of Corrections were dismissed on July 27, 2006.

Order to Dismiss (docket # 15), p. 3.  In addition, all claims for damages against Lane County

District Attorney Doug Harcleroad and Assistant Lane County District Attorney Robert Lane

were dismissed.  *Id*, p. 4.  No basis for allowing those claims to be realleged appears in the

record.  Moreover, as explained in more detail below, the record reveals no basis for injunctive

relief against Harcleroad and Lane.  Thus, to the extent the Second Amended Complaint alleges

claims against these two individual defendants, they should be granted summary judgment *sua

sponte*.

　　　　In addition, this court dismissed all claims against Deputy Rose on December 20, 2006,

based on Norland's failure to identify any particular conduct by him.  Findings and

Recommendation (docket # 30), p. 4, adopted by Order (docket # 32).  This court allowed

Norland 30 days to file a new pleading including specific allegations against Deputy Rose.  The

Second Amended Complaint specifically incorporates the allegations in Norland's Petition for a

Writ of Habeas Corpus and names Deputy Rose as a defendant in Counts 2 through 14.  As noted

in this court's earlier findings, the Petition for Writ of Habeas Corpus alleges that "LCAC

Deputy R. Rose has denied petitioner photocopys, five ($5) payment from commissary and mail

this out has retaliated when asked.  Respondents have violated Title 42/1983 and conspired to

deny access to the Court by delay and rules violating due process and to fair access to the court."

Second Amended Complaint, Ex. R, p. 6.  Deputy Rose responded to the Second Amended

Complaint by admitting that he is an "employee of the Lane County Sheriff's Office and was

employed, at relevant times, at the Lane County jail."  Answer of Defendant Rose to Second

Amended Complaint (docket # 39), ¶ 3.  However, neither the Second Amended Complaint nor

Norland's voluminous filings since that time shed any further meaningful light on Deputy Rose's involvement.

The only additional allegation is that Deputy Rose "held out communications to the court," thereby delaying Norland's release. Second Amended Complaint, ¶ 39. The only other information that can be gleaned from the record is that on October 10, 2005, Norland asked Deputy Rose for writing and postal materials in order to prepare and mail a habeas corpus petition. Plaintiffs' Response to Defendants' Motion for Summary Judgment (docket # 88), p. 12. The following day, Deputy Rose contacted Maslow, inquiring how much longer Norland was going to be in jail and advising that Norland was "claiming to be completely innocent of any wrong doing and is keeping himself busy with the law library and threatening to sue everyone." *Id*, Ex. CC. Maslow told Deputy Rose that the "court has control of this case," and it was "up to [the] court how long [Norland] is in custody." *Id*. The only explanation for Norland's continued incarceration between October 10 and 13, 2005, is that he did not post the required bond for release. Other than vague allusions to a conspiracy, Norland fails to explain how Deputy Rose was or could have been involved in that "delay" of Norland's release. Accordingly, to the extent the Second Amended Complaint alleges claims against Deputy Rose, they are unsupported by the record. Deputy Rose therefore should be granted summary judgment against all of Norland's claims.

### B.  Additional Putative Defendants

In addition to those defendants already dismissed, Norland repeatedly refers to several individuals who are not named in the caption as "defendants," including defendants' attorney (Liane Richardson), two individuals who are employed by the Lane County Sheriff's Office and

who filed affidavits in support of defendants' motion for summary judgment (Greg Fox and Joe Pishioneri), and various judges and others tangentially involved in the events surrounding Norland's arrest and detention.  Plaintiff's Response to Defendants' Motion for Summary Judgment, p. 13; Plaintiff's Response to Defs' CSMF, pp. 20-21.  None of these individuals are named in the caption of the case, and Norland has not formally sought to add them as defendants.  To the degree Norland refers to them as "defendants," Norland is mistaken that they are proper defendants.  There are no claims against them, and this court treats them only as potential third-party witnesses.

###    C.    Doe Defendants

Although both the Amended Complaint filed May 30, 2006, and the Second Amended Complaint filed December 27, 2006, name "Unknown agents, Jane Doe, et all [*sic*]" as defendants, Norland has not attempted to identify those persons.  Pursuant to FRCP 4(m), a court must dismiss an action without prejudice if a defendant has not been served within 120 days after the complaint is filed, unless the plaintiff shows good cause for the failure.  It is apparent from the docket that Norland has not satisfied the 120-day deadline in FRCP 4(m) by attempting to identify, name, and serve any of the unknown agents or Doe defendants and has offered no explanation for his failure to do so.  Therefore, all claims against the unknown agents and Doe defendants should be dismissed.

Any dismissal under FRCP 4(m) is "without prejudice" to a plaintiff's right to re-file.  However, this arguably does not toll any statute of limitations that might have run in the interim.  *See Tuke v. United States*, 76 F3d 155, 156 (7th Cir 1996) ("Dismissal . . . without prejudice does not mean without consequence.  If the case is dismissed and filed anew, the fresh suit must

satisfy the statute of limitations." (internal quotations and citation omitted)).  Nearly four years

has passed since the incidents at issue in this case, and the statute of limitations now has run on

all of Norland's claims.  The statute of limitations for § 1983 actions is determined by state law.

*Harding v. Galceran*, 889 F2d 906, 907 (9th Cir 1989), *cert denied*, 498 US 1082 (1991).  For

statute of limitations purposes, § 1983 actions are characterized as personal injury actions.  *Id*.  In

Oregon, the statute of limitations on such actions is two years.  ORS 12.110(1); *Cooper v. City of

Ashland*, 871 F2d 104, 105 (9th Cir 1989).  Similarly, all of Norland's state law claims are barred

by Oregon's two-year statute of limitations.  ORS 12.110(1) (injuries to person not arising on

contract).  Thus, all claims against any unknown agents or Doe defendants should be dismissed

with prejudice.

## II.  Claims

Norland alleges 12 claims for relief stemming from his arrest and one week stay in the

Lane County jail.  He also alleges "reserved" claims stemming from those same events, including

several claims Norland intends to bring as class actions.  Norland asserts that defendants' actions

violated his rights under the First, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Fourteenth

Amendments to the United States Constitution, were part of a conspiracy to violate those rights,

or constituted a knowing, reckless, or grossly negligent failure or refusal to prevent the violation

of those rights.  Norland's multitude of claims center on four broad factual predicates, namely:

(1) the fact he was arrested at all; (2) the manner of his arrest; (3) the conditions of his

confinement; and (4) the delay in his release.  As explained below, with the sole exception of his

claim for a strip search in violation of the Fourth Amendment, Norland has either asserted

violations of provisions that will not support a claim or submitted no facts which will support a

claim.  Moreover, he has provided no basis for certification of a class action or for injunctive

relief.  Accordingly, defendants should be granted summary judgment against each of Norland's

claims, except Count 3 for a strip search in violation of the Fourth Amendment.

### A.  Conduct Forming Basis of Norland's Claims

#### 1.  Fact of Arrest

Several of Norland's claims are premised on the assertion that his October 7, 2005 arrest

was not justified or supported by probable cause.  The thrust of these claims is that Norland

justifiably did not report to work at Bring Recycling because he had an injured toe and had until

the end of November 2005 to complete his community service work.  According to Norland, this

made his arrest premature and thus improper.  Norland contends that Maslow had a "duty" to

protect him from false arrest and should have alerted the district attorney (Robert Lane) and the

sergeant responsible for monitoring his compliance with his community work service

requirements (Greg Fox) about his progress.  He also claims that he was legitimately confused

about Maslow's directive to report to Fox, since he rationally believed that Maslow, not Fox, was

in charge of the community service work program.

The difficulty with these contentions is that the record undisputably reveals that Norland

was required to perform community service work at a minimum rate of 10 hours per month and

that he failed to perform any such work for the preceding eight months.  Norland can premise no

claim, constitutional or otherwise, on defendants' reporting his non-compliance to the court or

the court's issuance of a bench warrant for his failure to comply.  *See* ORS 137.545 ("At any

time during the probation period, the court may issue a warrant and cause a defendant to be

arrested for violating any of the conditions of probation.").  Accordingly, to the extent that

Norland's claims are premised upon the bare fact that he was arrested, defendants are entitled to summary judgment.

### 2. **Manner of Arrest**

Next, Norland makes a variety of assertions concerning the manner in which he was arrested. In particular, he alleges that defendants failed to advise him of his *Miranda*[3] rights, failed to provide him with a complaint, information, or indictment prior to his arrest, and placed him in handcuffs and a seatbelt while transporting him to jail.

### a. **Failure to Advise of *Miranda* Rights**

The Fifth Amendment requires that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment is regularly invoked to prevent the use of coerced statements against a defendant in criminal proceedings. However, Norland's claim that he was not provided with advice of his *Miranda* rights suffers from two fatal flaws.

First, nothing in the record indicates that Norland made any statement to defendants while in custody that defendants could or did use in any further criminal proceeding against Norland. The touchstone of a Fifth Amendment claim is the later use of an incriminating statement by the defendant while in custody. Here, there is no evidence that Norland made any statement while in custody.

Second, even if Norland identified a statement which was arguably incriminating and made while in custody without *Miranda* warnings, the record is abundantly clear that Norland was never tried on a criminal charge as a result of any such statement. At worst, Norland was subjected to a probation violation hearing based on his failure to complete any community

---

[3] *Miranda v. Arizona*, 384 US 436 (1966).

service work prior to his arrest on October 7, 2005.  Thus, to the degree Norland's claims are premised on a lack of *Miranda* warnings, his pleadings fail because he was never subjected to a criminal trial stemming from statements he made while in custody.

### b.  Failure to Provide Complaint, Information, or Indictment

Norland also contends that he was not provided with a complaint, information, or indictment prior to his arrest.  Second Amended Complaint, ¶ 24.  This assertion fails for the simple reason that Norland was arrested pursuant to a bench warrant issued on the basis of a parole violation.  Norland admitted that he was provided with a copy of the Order to Show Cause issuing the bench warrant.  Defs' CSMF, Attachment 13.  The failure to provide him with nonexistent documents (*i.e.*, complaint, information, or indictment) is of no moment.

### c.  Use of Handcuffs and Restraint in Seatbelt During Transport

Finally, Norland alleges that Maslow placed him in handcuffs and restrained him in a seatbelt during his transport to the Lane County jail.  Lane County's policies on Offender Supervision required Maslow to arrest Norland once Maslow knew of the bench warrant.  Defs' CSMF, Attachment 2, p. 5.  Norland alleges that he suffers from PTSD such that handcuffing and being "trapped" in a car could cause him trauma by triggering the previous PTSD trauma. Second Amended Complaint, ¶ 16.  He also alleges that he has a "seat belt exemption from previously being trapped in a car accident."  *Id*.  Whatever the likelihood of these events, a searching review of the record reveals no evidence that Maslow was aware that Norland suffered from PTSD or had an exemption from wearing seatbelts.

Nor does the record reveal any evidence that Norland in fact suffered any injury, emotional or otherwise, from the fact that he was handcuffed and placed in a patrol car for

transport to the jail.  Norland never complained about any symptoms related to the handcuffing

or ride in a patrol car when he reached the jail, despite evaluation by medical staff at the jail on

the same day he arrived (October 7, 2005) and the day before he was released (October 12,

2005).  *See* Defendants' Motion for Summary Judgment (docket # 83), Attachment 19.  Nor do

the materials submitted by Norland evidence any such injury, however minor.  Instead, the only

reference in the record on this subject is Norland's allegation that Maslow "should have known"

that handcuffing and restraint in a patrol car "could cause additional trauma" and "would likely

trigger the previous PTSD trauma."  Second Amended Complaint, ¶ 16.  Because the record is

devoid of any knowledge by Maslow on that topic and of any evidence of actual injury to

Norland as a result of the handcuffing and transport in a patrol car, defendants are entitled to

summary judgment against Norland's claims to the extent they are premised on Norland being

handcuffed and transported in a patrol car.

### 3. Strip Search

Next, Norland alleges that he was "subjected in the County jail to a strip search of his

body, including his rectal cavity."  Second Amended Complaint, Count 3, ¶¶ 28-29.  Defendants

have moved for summary judgment against this claim on two grounds, namely that there is no

record that Norland was ever subjected to a strip search, and even if he was, the search was

pursuant to Lane County's valid search policy, which provides:

///

///

///

///

A.  Prior to dress-in and housing, determination will be made regarding the type of inmate search, based upon review of the charges, past history and current behavior and
B.  A visual body-cavity search, as described in this section, involves a complete, unclothed visual search of the body, including mouth, ears, rectal, vaginal and genital areas.  Visual body-cavity searches will be documented on the jail initial housing instrument.  Refer to Section 5.52 for procedures.
Presence of any of the follwing criteria will dictate when a visual body-cavity search is required:

               *          *          *

7.  Probation or parole violations.

Defs' CSMF, Attachment 15, p. 2.

Doug Hooley, a Captain in the Lane County Sheriff's Office states:  "There is no documentation that [Norland] was strip searched prior to housing.  However, per department policy, since he was on probation and was arrested by Probation Officer Maslow, our normal procedures indicate that he should have been strip searched prior to being housed in the Second Floor Dorms."  Hooley Aff., p. 3.  An exhaustive review of all the materials filed in this case after the Second Amended Complaint reveals only a single sentence from Norland regarding this alleged search.  In their fact statement, defendants assert that when Norland "was booked in to the Lane County [Adult] Correctional facility, his personal items were taken from him, inventoried and secured."  Defendants' CSMF, ¶ 15.  Norland responded as follows:  "Booking seized Plaintiff's clothes and forced plaintiff to submit to unwanted touching and assault."  Plaintiff's Response to Defendants' CSMF (docket # 91), p. 12.

Norland clearly alleges that he was subjected to a strip search.  Defendants have submitted no facts that directly dispute that allegation.  Given Norland's allegation and his response to defendants' motion, as well as defendants' written policy, this court must conclude at

this juncture that Norland was subjected to a strip search. However, Norland has not named any individual defendant who conducted or participated in the strip search, and no document exists that would identify such a person. The only persons who were employed at the jail and named as defendants on the strip search claim are Sheriff Burger and Deputy Rose. Norland alleges no facts against Sheriff Burger individually. As discussed above, he accuses Deputy Rose only of denying him the writing and postal materials necessary to file his habeas corpus petition, not participating in the strip search. Norland also names "unknown Lane County employees," but, as discussed above, such unknown defendants should be dismissed based on a failure to timely identify and serve them.

On this claim, Norland also names the "Lane County Adult Corrections." Defendants deny that Lane County Adult Corrections is an entity that can be sued as a legal entity separate and distinct from Lane County. Answer of Defendant Lane County Commissioners to Second Amended Complaint, ¶ 3. However, they admit that "Lane County, through its Commissioners, is responsible for the operation of the Lane County jail, also know [sic] as the Lane County Adult Correctional Facility," where Norland was booked and searched. *Id*.

Municipalities and other local governmental entities, including counties, are "persons" within the meaning of § 1983. *Monell v. Dep't of Social Servs. of City of New York*, 436 US 658, 690-91 (1978). In order to hold a municipality liable, a plaintiff must prove the individual defendants acted pursuant to a government custom or policy. *Id*; *City of Oklahoma City v. Tuttle*, 471 US 808, 823 (1985). Here it is undisputed that Lane County Adult Corrections adopted a policy pursuant to which Norland, as a person arrested for a probation violation, was subjected to a strip search. Defs' CSMF, Attachment 15, p. 1. According to the

Ninth Circuit, "blanket strip searches of pre-arraignment detainees regardless of severity of charge and without reasonable suspicion are unconstitutional." *Bull v. City and County of San Francisco*, 539 F3d 1193, 1199 (2008), *reh'g en banc ordered*, 558 F3d 887 (9th Cir Feb. 20, 2009). Lane County Adult Corrections' search policy requires a visual body-cavity search when an individual is taken into custody for a probation or parole violation, and does not require that the underlying violation involve violence, weapons, or controlled substances, or some other violation that might provide reasonable suspicion that the individual arrested is hiding contraband. Defendants do not address whether its strip search policy is constitutional. Accordingly, Norland has a potential § 1983 claim against Lane County Adult Corrections.

It must be noted that if Norland's conditions of probation allowed such a search, then he would have no claim. The general conditions of probation provide that Norland;

> Consent to the search of person, vehicle or premises upon the request of a representative of the supervising officers if the supervising officer has reasonable grounds to believe that evidence of a violation will be found, and submit to fingerprinting or photographing, or both, when requested by the Department of Corrections or a county community corrections agency for supervision purposes.

Defts' CSMF, Attachment 1, p. 5.

This condition does not authorize a strip search, or any search, of his person without reasonable cause. Given that Norland specifically complains about a strip search pursuant to a policy that may be unconstitutional in the Ninth Circuit and has named the entity that adopted that policy, Lane County Adult Corrections is not entitled to summary judgment on Count 3. It is unclear whether Lane County Adult Corrections is subject to suit. Answer of Defendant Lane County Commissioners to Second Amended Complaint, ¶ 3. At this juncture, this court merely

concludes that the strip search claim, to the extent it is premised on the Fourth Amendment, and

to the extent it is alleged against the person(s) who enacted and implemented the search policy of

Lane County Adult Corrections, Norland's claim survives the pending summary judgment

motion.  Remaining issues such as whether Lane County Adult Corrections is an entity that can

be sued, whether some other entity or person should be named as the proper defendant, or

whether this claim lacks merit for some other reason cannot be resolved on the basis of the

current summary judgment motion.

### 4.  Conditions of Confinement and Procedural Issues

Norland raises a host of complaints about the conditions of his confinement and alleged

deficiencies in the basis for his arrest, as well as in booking, arraignment, and release procedures

and timing.  None of those complaints withstands scrutiny.

### a.  Failure to Address Medical Needs

Norland alleges that his medical needs were not adequately addressed during his stay in

the Lane County jail.  This appears to be based on the contention that defendants failed to

provide adequate care for the toe that he smashed with a filing cabinet about a week before his

arrest.  He asserts that his toe "did become infected in jail and require corrective surgery,"

Second Amended Complaint, ¶ 9, but gives no additional details.  Nevertheless, the documents

submitted refute any claim that Norland's request for medical attention was ignored.  Norland

was evaluated by medical staff the same evening he was booked into the jail.  Defs' CSMF,

Attachments 19-20.  At that time, he alerted medical staff to his smashed toenail.  The toenail

was discolored, but the skin tissue of the toe was pink and showed no signs or symptoms of

infection. *Id.* Five days later, Norland was again seen by medical staff, and this time it does not appear that his toe was even discussed.

To the degree Norland alleges constitutional claims premised upon a lack of adequate medical care, those claims are viable only if the defendant "'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson v. County of Washoe, Nevada*, 290 F3d 1175, 1187-88 (9th Cir 2002), *cert denied*, 537 US 1106 (2003), quoting *Farmer v. Brennan*, 511 US 825, 837 (1994). That standard is clearly not met here. Norland also alleges state law claims for varying degrees of negligence, but fails to identify any other duty to him on this front, as well as any injury resulting from any alleged deficiency in medical care. Accordingly, to the degree his claims rest on an alleged denial of medical care, defendants are entitled to summary judgment.

### b. <u>Access to the Courts</u>

Norland also alleges that he was denied access to the law library and other resources he needed in order to file a petition for a writ of habeas corpus. Norland filed a series of Inmate Request Forms (kites) after being booked. Security staff received the first kite at about 10:00 p.m. on Friday, October 7, 2005, the day Norland was arrested. Second Amended Complaint, Ex. I-2. The law library manager received that kite midday on Monday, October 10, 2005. Pishioneri Aff., p. 2. Pishioneri responded the following day by approving Norland's request for law library privileges and attaching a writ of habeas corpus form. *Id*, pp. 2-3. However, before Pishioneri's response arrived, Norland filed another kite stating he had not received access to the law library and had received no response to his prior kite. Second Amended Complaint, Ex. J-2. Staff responded immediately that Norland would be provided access to the law library when his

application (October 7, 2005 kite) was approved.  *Id*.  Norland was provided access to the law library the following day, October 12, 2005.  The next day, some time before he was released, Norland apparently submitted a third kite, stating he needed "meaningful access to the law library (not 50 minutes) of at least 2 hours a day while incarcerated without being found guilty."  Second Amended Complaint, Ex. K.

Norland claims that he was deprived of access to the resources he needed in order to present his claims to the court in violation of *Bounds v. Smith*, 430 US 817, 828 (1977).  His third kite, submitted the day he was released, demanded two hours a day in the law library.  In his pleadings, he seeks to administer a $10,000,000 pot of money dedicated to upgrading the state's prison law libraries and ensuring access to those facilities by inmates.  However, *Bounds* does not require immediate access to a law library or other resources which conforms to a prisoner's particular desires, but instead requires only that prisoners be given a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Id* at 825.  Norland was provided access to the law library within 48 hours after the law librarian received his request.  His petition in this court, filed the same afternoon he was released, adequately presented his claims.  "Failure to show that a 'nonfrivolous legal claim had been frustrated' is fatal to his *Bounds* claim."  *Alvarez v. Hill*, 518 F3d 1152, 1155 n1 (9th Cir 2008), quoting *Lewis v. Casey*, 518 US 343, 353 & n4 (1996).  Because Norland has failed to show that any nonfrivolous claim was frustrated, defendants are entitled to summary judgment to the extent Norland claims a violation of his right of access to the courts.

///

23 - ORDER, FINDINGS AND RECOMMENDATION

### c. __Failure to Arraign on Same Day Arrested__

Another of Norland's contentions is that he was not arraigned the same day as his arrest. After being arrested on a bench warrant issued pursuant to an Order to Show Cause that he appear and show cause why his probation not be revoked, Norland was lodged at the Lane County Correctional Facility at 10:37 a.m. on Friday, October 7, 2005, and housed in the dorms at 5:53 p.m. that night. Hooley Aff., p. 2. Some time later, a contempt charge was added to the proceedings against Norland. Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. GG.

Cut-off time for arraignment in Circuit Court is 6:00 a.m., Monday through Friday, for arraignment the same day. Hooley Aff., p. 2. That time restriction is set by the court, and anyone lodged in to the jail after that time must be set for arraignment the following business day. *Id*. Norland was arraigned on the contempt charge related to the failure to pay parking fines the morning of Monday, October 10, 2005, at 11:00 a.m. in Eugene Municipal Court. *Id*. At 1:30 p.m. that same afternoon, he appeared in Lane County Circuit Court pursuant to the Order to Show Cause on which the bench warrant was based. *Id*; Defs' CSMF, Attachment 8. Oregon law requires arraignment within the first 36 hours of custody, excluding holidays and weekends. ORS 135.010. Given that Norland's arrest took place at 10:37 a.m. on Friday, October 7, 2005, his arraignment[4] at 11:00 a.m. in the Eugene Municipal Court on Monday October 10, 2005, was clearly within that 36-hour window.

---

[4] Defendants assert that Norland was "arraigned" on the probation violation in Lane County Circuit Court on the afternoon of October 10, 2005. Hooley Aff., p. 2. It is undisputed that Norland was arrested pursuant to a bench warrant, the function of which "is to achieve the court appearance of a defendant in a criminal action for some purpose other than the initial arraignment of the defendant in the action." ORS 131.005. Norland's appearance before the Lane County Circuit Court consisted of the court inquiring whether Norland had a copy of the order to show cause, entering a denial to the allegation that he had violated the conditions of his probation, and scheduling a hearing two weeks later. Plaintiff's Reply to Motion for Sanctions (docket # 102), Ex. D.

Similarly, Norland's appearance in court on the Order to Show Cause took place on the first business day and less than 28 hours (excluding weekend hours) after his arrest. This was also within the 36-hour window of ORS 135.010. Because Norland "was confined pursuant to a bench warrant, he was entitled to have a speedy court appearance to determine whether he should be released pending trial." *Oviatt by and through Waugh v. Pearce*, 954 F2d 1470, 1475 n3 (9th Cir 1992), citing ORS 135.245(1) and ORS 131.005; *see also* ORS 136.290 (requiring commencement of trial or release within 60 days after arrest except for crimes which are not releasable offenses). Although he remained detained for a few days following his arraignment, Norland had a hearing date set on the probation violation two weeks later and was released after friends posted bail on his behalf a few days later. Ideally, the wheels of justice might have turned more quickly to ensure that Norland did not spend the weekend in custody. However, the fact that they did not poses no constitutional issues.

### d. Delay in Release

Norland also contends that the delay in his release caused him to miss a scheduled hearing in United States Bankruptcy Court. According to the docket entries in the United States Bankruptcy Court for the District of Oregon, the United States Trustee filed three complaints against Norland under 11 USC §110, which governs "Bankruptcy Petition Preparers," which were eventually consolidated. A default judgment was entered after Norland failed to appear at a pretrial conference on August 11, 2005 (dockets # 113 & # 123 in Case No. 04-06281). Norland moved for relief from the judgment and a hearing was scheduled for October 13, 2005 (dockets # 114 & # 118). He missed the hearing, but wrote to explain that he had been detained, so the hearing was reset (dockets # 125 & # 126). After a hearing on November 22, 2005, attended by

Norland, the relief was denied.  Therefore, even if his release was delayed and caused him to

miss the hearing on October 13, 2005, he suffered no damage as a result.  As a result, this claim

lacks merit.

### e.  Failure to Return Cash

Norland further contends that when he was released from the Lane County jail on

October 13, 2005, the cash he had in his possession when he was arrested, which exceeded

$1,000.00, was not returned to him.  *See* Second Amended Complaint, ¶ 18[5] & Ex. H.  Instead,

he was given a negotiable instrument rather than cash, which caused him to miss a mortgage

payment.  Plaintiff's Response to Defs' CSMF, p. 12.  It is undisputed that Norland's personal

property was returned to him upon his release and that the money was also returned to him, albeit

not in the form he would have preferred.  Norland simply cannot establish any damages from this

allegation.

### B.  Unsupported Legal Theories and Requests for Relief

Apart from these general factual assertions which form the underpinnings of Norland's

claims, Norland repeatedly references a number of legal theories based on constitutional

provisions and state law, purports to intend to seek certification of a class action, and requests

injunctive relief.  As discussed below, several of Norland's claims are simply unsupported by the

undisputed evidence in the record; his theory of the case will not support a request for class

certification; and his request for injunctive relief is defective.

///

---

[5] This allegation is one of a series of allegations listed as causes of action for loss of use of property and legal work product.  Second Amended Complaint, ¶ 18.

26 - ORDER, FINDINGS AND RECOMMENDATION

### 1. **Constitutional Claims**

Norland's theory of his case, interwoven throughout the record, is that defendants retaliated against him because he exercised his rights to file motions or otherwise participate in a proceeding in bankruptcy court. According to Norland, his arrest, the alleged denial of access to the law library and other materials he would need to petition the court (writing and postal materials), the delay in his arraignment, and the delay in his release, were all orchestrated by defendants for the express purpose of making him miss a hearing in bankruptcy court. Norland contends that the only persons who had "jurisdiction" to take actions against him were his probation officer (Maslow) and the sentencing judge on the underlying charges (Judge Mitchell). Response to Defs' CSMF, p. 21. However, because Maslow was allegedly involved in the conspiracy, Maslow falsified the booking documents by writing that Norland was being booked on the underlying charge (Encouraging Child Sexual Abuse 3), rather than on a probation violation. Norland alleges that this scheme denied him his rights under the First, Fourth through Ninth, and Fourteenth Amendments to the United States Constitution. Although not addressed in detail by the parties, this court will briefly outline the incurable deficiencies in these constitutional claims.

### a. **First Amendment**

Although not entirely clear from the pleadings, Norland appears to claim a First Amendment violation resulting from his inability to attend a bankruptcy hearing or file a petition for habeas corpus relief. In order to state a claim for violation of his First Amendment right, Norland must establish that his speech was restricted or his ability to petition the government for redress was impeded. He can do neither. Norland filed his habeas corpus petition in this court

within only a few business days of his arrest and appeared at the bankruptcy hearing when the

court rescheduled the hearing that he missed due to his incarceration.  Thus, he has no viable

claim for violation of his rights under the First Amendment.

### b.  <u>Fourth Amendment</u>

As discussed above, the one claim which survives defendants' motion is the claim for a

violation of the Fourth Amendment resulting from Norland's strip search when he was booked

into the Lane County Adult Correctional Facility.

### c.  <u>Fifth and Fourteenth Amendments</u>

Norland also alleges that defendants' actions violated his rights under the Fifth and

Fourteenth Amendments.  While it is far from clear, Norland appears to allege that he was not

provided with an indictment and *Miranda* warnings in violation of the Fifth Amendment.

However, for the reasons above, those claims fail.  Similarly, Norland repeatedly asserts that

defendants violated his due process rights.  The "Fifth Amendment's due process clause only

applies to the federal government." *Bingue v. Prunchak*, 512 F3d 1169, 1174 (9th Cir 2008)

(citations omitted).  Norland names no federal agencies or agents as defendants, rendering

inapplicable the guarantees of the Fifth Amendment's due process clause.

To the extent he alleges a claim for violation of the Fourteenth Amendment, Norland's

pleadings fare no better.  When "an amendment 'provides an explicit textual source of

constitutional protection against a particular sort of government behavior," it is that Amendment,

not the guarantee of due process, that 'must be the guide for analyzing' the complaint.'" *Picray*

*v. Sealock*, 138 F3d 767, 770 (9th Cir 1998), quoting *Albright v. Oliver*, 510 US 266, 273 (1994)

(plurality opinion) (remaining citations omitted).  Here, Norland's constitutional claims are

premised upon conduct that falls squarely under other specific constitutional provisions.  As a result, he may not rely on the generalized notions of due process to pursue his claims.

### d.  Sixth Amendment

Norland also alleges violation of the Sixth Amendment, which provides various pretrial and trial protections in criminal proceedings.  The thrust of his Sixth Amendment claims seems to be that he was not provided with a complaint, information, or indictment prior to his arrest.  However, again, his arrest was on a bench warrant issued as a result of probable cause that he had committed a parole violation by failing to follow through on his community service obligations.  As discussed above, that fact is fatal to his claim, and nothing in the record supports the notion that his Sixth Amendment rights were otherwise violated.

### e.  Seventh Amendment

The Seventh Amendment guarantees that the right to a trial by jury shall be preserved in civil cases.  *Armster v. United States Dist. Court for the Cent. Dist. of Cal.*, 792 F2d 1423, 1428 n11 (9th Cir 1986).  Norland wholly fails to allege, much less explain, how defendants compromised his right to a jury in a civil case.  Accordingly, to the extent he alleges a violation of his rights under the Seventh Amendment, the record does not support any violation.

///

///

///

///

///

## f. **Eighth Amendment**

Norland alleges violations of the Eighth Amendment which appear to be premised either on Maslow's act of placing him in handcuffs in the back of the cage car for transport to the jail,[6] or on the fact that his injured toe became infected and later required corrective surgery. "In order to defeat summary judgment, under traditional Eighth Amendment standards used in Fourteenth Amendment claims such as this one, [Norland] must show that he was (1) confined under conditions posing a risk of objectively, sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care." *Lolli v. County of Orange*, 351 F3d 410, 419 (9th Cir 2003) (citation, internal quotations omitted). As discussed above, neither Norland's allegations nor his proof rise to that level. Accordingly, defendants are entitled to summary judgment against Norland's claims to the extent they allege a violation of the Eighth Amendment.

## g. **Ninth Amendment**

Finally, Norland alleges a violation of his rights under the Ninth Amendment, which provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." How Norland claims a Ninth Amendment violation is entirely unclear. In any event, "the Ninth Amendment 'has not been interpreted as

---

[6] Norland's allegations regarding the manner of his handcuffing and transport normally would fall under the purview of the Fourth Amendment, which provides the proper framework for excessive force claims. *Lolli v. County of Orange*, 351 F3d 410, 418 (9th Cir 2003). However, Norland explicitly ties the harm that might have befallen him from those actions to an alleged lack of medical care while he was in jail. Given Norland's status as a pretrial detainee, it is not the Eighth Amendment, but the substantive due process clause of the Fourteenth Amendment, that applies to his claim of a failure to provide medical care for serious medical needs. *Id.* Without specifying any particular constitutional provision, Norland claims a denial of medical care related both to the handcuffing and transport to jail and to the toe injury. Second Amended Complaint, p. 12. He also repeatedly claims violations of the Fourth, Eighth, and Fourteenth Amendments without specifying which provision he claims controls the alleged lack of medical care claims. In any event, "[b]ecause pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment . . . we apply the same standards." *Frost v. Agnos*, 152 F3d 1124, 1128 (9th Cir 1998).

independently securing any constitutional rights.'" *San Diego County Gun Rights Committee v. Reno*, 98 F3d 1121, 1125 (9th Cir 1996), quoting *Schowengerdt v. United States*, 944 F2d 483, 490 (9th Cir 1991) (additional citation omitted). Accordingly, Norland has no claim for violation of the Ninth Amendment.

### 2. **Conspiracy**

Norland also alleges several conspiracy claims, asserting that defendants and other "unknown agents" conspired to violate his constitutional rights and unlawfully detain him so that he would miss his bankruptcy court hearing. Second Amended Complaint, Count 4 (¶¶ 30-31), Count 11 (¶¶ 70-75), & Count 15 (p. 34). However, because Norland's constitutional claims fail (with the sole exception of his Fourth Amendment claim), his conspiracy claims for those alleged violations also fail as a matter of law, except to the extent they are premised upon the alleged conspiracy to violate Norland's Fourth Amendment right to be free from an unreasonable search. *Hart v. Parks*, 450 F3d 1059, 1071 (9th Cir 2006) (failure to show actual deprivation of constitutional rights resulting from alleged conspiracy is fatal to conspiracy claims) (citation omitted). However, Norland does not specifically allege a conspiracy related to his strip search.

### 3. **"Reserved" Claims for Class Actions**

Norland also alleges several claims in which he apparently intends to request certification of class actions for claims alleging violations of due process and equal protection rights, as well as a "CLASS ACTION SLAPP."[7] Norland did not respond in any meaningful way to defendants' contention that his claims are inappropriate for certification as class actions.

---

[7] This appears to be a reference to Oregon's anti-SLAPP (strategic lawsuits against public participation) statute, ORS 31.150.

Moreover, the record reveals that Norland's claims are premised in large part on his allegation that defendants' actions were not directed generally at denying prisoners *Miranda* warnings or access to legal materials, but were instead directed specifically at Norland in an effort to ensure that he missed a scheduled hearing in bankruptcy court.  As a result, it is difficult to conceive how Norland's claims could satisfy the requirements of FRCP 23.  Accordingly, each of Norland's class action allegations or claims should be dismissed.

### 4.  **Request for Injunctive Relief**

Norland's request for injunctive relief appears to stem from his claims that defendants failed to advise him of his *Miranda* rights and violated his right of access to the courts by failing to provide him with legal materials.  He asks this court to fine the Oregon Department of Justice $100,000 and order it to provide $10,000,000 for the development of an annual budget which Norland will oversee to make improvements to the prison law library and ensure fair *pro se* access to legal materials while incarcerated.  Second Amended Complaint, p. 39.  However, as explained in detail above, the undisputed facts reveal no violation of Norland's constitutional right against self-incrimination or of access to the courts, making relief inappropriate for Norland or any class he purports to represent.  Moreover, even if Norland could state a claim and a basis for injunctive relief, the Oregon Department of Justice is not a defendant in this action.  Thus, Norland has stated no basis for injunctive relief and, even if he had, the party against whom he seeks that relief is no longer a defendant in this case.  Thus, defendants should be granted summary judgment against Norland's claims to the extent he seeks injunctive relief.

///

///

32 - ORDER, FINDINGS AND RECOMMENDATION

5. **State Law Claims**

Norland also alleges a multitude of state law claims, including claims for malicious

prosecution (Second Amended Complaint, Count 6 (¶¶ 38-42)), malicious abuse of process (*id*,

Count 7 (¶¶ 43-49)), false arrest (*id*, Count 8 (¶¶ 50-55)), intentional and negligent harm (*id*,

Count 9 (¶¶ 56-61)), intentional infliction of emotional distress (*id*, Count 12 (¶¶ 76-83)), gross

negligence (*id*, Count 13 (¶¶ 84-89)), and negligent infliction of emotional distress (*id*, Count 14

(¶¶ 90-98)).  Each of these claims also fails.[8]

As discussed above, the undisputed facts reveal that Norland's arrest was based on a

bench warrant issued for violations of the terms of Norland's conditions of release.  Friends

posted his bail and Norland later obtained additional time to complete his community service

work.  Nothing in the record reveals or even hints that Norland was falsely arrested, prosecuted,

or that the legal process was otherwise abused to his detriment.  Norland contends that the

probation violation charge was resolved in his favor because he was granted additional time to

complete his community service work.  However, the leniency of the court in allowing Norland

additional time does not undermine the legitimacy of defendants' action of obtaining a warrant

and arresting him in an effort to ensure his compliance with one of the conditions of his release.

Additionally, none of the conduct described in the record supports a finding that

defendants' conduct was sufficiently outside the bounds of socially tolerable conduct to support a

claim for intentional infliction of emotional distress.  "'Liability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

---

[8]  Although they raised the issue as a third affirmative defense in their respective answers, defendants do not address in
their motion whether Norland filed any Tort Claims Notice under ORS 30.275, or was required to do so.

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *House v. Hicks*, 218 Or App 348, 358, 179 P3d 730, 736 (2008), quoting Restatement (Second) of Torts § 46 commend d (1965).  Moreover, "the cases suggest that conduct that is negligent, mistaken, or otherwise remiss, rather than deliberate, intentional, or engaged in by design will not support a claim for IIED."  *Delaney v. Clifton*, 180 Or App 119, 136-37, 41 P3d 1099, 1110 (2002).  Accordingly, Norland's claims for infliction of emotional distress fail.

## ORDER

Plaintiff's Motion for Sanctions (part of docket # 93) and Defendants' Motion to Strike Plaintiff's Response and Request for Sanctions (docket # 99) are DENIED.

## RECOMMENDATION

For the reasons stated above, Defendants' Motion for Summary Judgment (docket # 83) should be GRANTED IN PART AND DENIED IN PART.  All claims in this action should be dismissed against each defendant with prejudice, with the exception of Count 3 alleging a § 1983 violation based on a strip search against Lane County Adult Corrections.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due July 14, 2009.  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

34 - ORDER, FINDINGS AND RECOMMENDATION

**<u>NOTICE</u>**

The Findings and Recommendation is not an order that is immediately appealable to the

Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of

Appellate Procedure, should not be filed until entry of a judgment.

DATED this 25th day of June, 2009.

___/s/ Janice M. Stewart _____
Janice M. Stewart
United States Magistrate Judge

35 - ORDER, FINDINGS AND RECOMMENDATION